**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES L. BROWN and ALICE BROWN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-00591-KM |
| THE SUESSENBACH FAMILY LIMITED PARTNERSHIP, JAMES S. SUESSENBACH, and GINA M. SUESSENBACH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACCESS MIDSTREAM PARTNERS, L.P., *et al.*,<br><br>Defendants. | No. 3:14-cv-01197-KM |

**SUPPLEMENTAL JOINT CASE MANAGEMENT PLAN**

Having met and conferred pursuant to the LOCAL RULES, Plaintiffs James L. Brown and Alice Brown ("*Brown* Plaintiffs"), The Suessenbach Family Limited Partnership and Gina M. Suessenbach ("*Suessenbach* Plaintiffs")[1] (collectively,

[1] *See* Suggestion of Death Pursuant to Federal Rule of Civil Procedure 25(a)(2), *Suessenbach*, ECF 181.

"Plaintiffs"), Defendant Access Midstream Partners, L.P., now The Williams Companies, Inc. ("Access Midstream"), and Defendant Domenic J. Dell'Osso, Jr. ("Mr. Dell'Osso") (collectively with Access Midstream, "Defendants") (together with Plaintiffs, referred to as the "Parties")[2] propose the following Supplemental Joint Case Management Plan to govern proceedings in these cases going forward.

## 1. Principal Issues

### 1.1 Separately for each party, please give a statement summarizing this case:

**By the *Brown* Plaintiffs:**

The *Brown* Action is a civil RICO case brought on behalf of Pennsylvania natural gas lessors against individuals and entities who conspired to implement and implemented an off-balance sheet corporate financing scheme to enrich themselves by wrongfully reducing royalty payments to these lessors. The *Brown* Plaintiffs seek relief on behalf of all similarly situated Pennsylvania natural gas lessors for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"),

---

[2] The terms "Plaintiffs," "Defendants," and "Parties" are being used for the convenience of this joint case management plan in light of these cases being consolidated for purposes of discovery only. *Brown*, ECF 74. They should not be used to prejudice Mr. Dell'Osso in any respect or in any way alter his status as a non-party in *Suessenbach v. Access Midstream Partners, L.P.*, No. 3:14-cv-01197-KM (the "*Suessenbach* Action"). Mr. Dell'Osso is a defendant only in *Brown v. Access Midstream Partners, L.P.*, No. 3:14-cv-00591-KM (the "*Brown* Action"). The Parties have attempted to be clear where an issue relates only to one of the actions.

18 U.S.C. §§ 1961–1968. The *Brown* Plaintiffs also assert a claim for unjust enrichment against Access Midstream Partners and Mr. Dell'Osso. Excluded from the class are Pennsylvania lessors having so-called Market Enhancement Clause ("MEC") leases. The alleged class is defined as follows:

> All lessors having oil and gas leases in Pennsylvania with Chesapeake Appalachia, LLC, during the period 2012 through the date of class notice herein, where Chesapeake Appalachia, LLC has subtracted from the lessor's royalty payment gas gathering and transportation costs calculated based on a Gas Gathering Agreement entered into by Chesapeake and Access Midstream.

Amended Class Action Complaint ¶ 55, *Brown*, ECF 57.

On September 30, 2015, Judge Mannion found that the *Brown* Plaintiffs had sufficiently alleged that Defendants were associated with and participated in the operation or management of a RICO enterprise, and engaging in more than two predicate acts of mail fraud and wire fraud, when they devised a scheme to allow Chesapeake Energy to obtain "an off-balance sheet loan from Access Midstream, its former subsidiary, disguised as an asset sale with repayment to be unlawfully funded by inflated charges to the plaintiffs." *Brown v. Access Midstream Partners, L.P.*, 141 F. Supp. 3d 323, 338 (M.D. Pa. 2015). Judge Mannion further recognized:

> The purpose of the off-balance sheet loan was to hide Chesapeake Energy's need for cash without alerting the market to its financial troubles. Instead of repaying the loan with legitimate funds, the plaintiffs allege that Chesapeake Energy, through its wholly owned subsidiary, Chesapeake Appalachia, and Access Midstream entered

> into gathering agreements knowing that the fees to be charged by Access Midstream were far in excess of the market rates of the fees; knowing that Access Midstream would rebate a portion of the inflated fees to Chesapeake Energy and its subsidiaries and affiliates; knowing that the inflated gas gathering and transportation fees would be passed along to lessors in the form of cost deductions from the lessors' royalty payments; and knowing that the plaintiffs were the intended targets of the scheme. The plaintiffs allege that Chesapeake Energy and Access Midstream were aware that Chesapeake Energy's affiliates had the authority to deduct certain expenses from the lessors' royalty payments and they conspired to abuse that authority to deduct unlawful amounts from lessors' royalty payments in order to enrich themselves.

*Id*. With respect to Mr. Dell'Osso, the Court recognized that the *Brown* Plaintiffs had also sufficiently alleged that Mr. Dell'Osso "participated in the operation and management of both the Access enterprise, as well as the association-in-fact enterprise which includes Chesapeake, Access Midstream, Chesapeake Appalachia and defendant Dell'Osso himself." *Id.* at 338.

After Chesapeake Energy and its subsidiaries filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on June 28, 2020, which became effective on February 9, 2021, Chesapeake Energy was dismissed from this case, as was Mr. Dell'Osso in his capacity as an officer of Chesapeake Energy. However, Access Midstream and Mr. Dell'Osso remain jointly and severally liable for the full amount of damages sustained by the class, which are trebled under RICO, and accordingly Chesapeake Energy's bankruptcy has no effect on the *Brown* Plaintiffs' claims or

right to recovery. *See State Farm Mut. Auto. Ins. Co. v. Lincow*, 444 F. App'x 617, 622 (3d Cir. 2011) (recognizing that "that the nature of the RICO offense mandates joint and several liability"); *Trickel v. Discount Gold Brokers, Inc.*, 2022 WL 452407, at *6 (M.D. Pa. Feb. 14, 2022) (same).

**By the *Suessenbach* Plaintiffs:**

The *Suessenbach* Action was also filed as a class action and asserts claims under RICO, unjust enrichment, conversion, and civil conspiracy against Defendant Access Midstream. The case is brought on behalf of an overlapping class of Pennsylvania lessors who sustained damages because of, *inter alia*, a scheme between Chesapeake and Access Midstream to artificially inflate gathering and transportation costs. The class is defined as:

> All Pennsylvania lessors having oil and gas leases in which Chesapeake Appalachia, LLC was a party during the period August 3, 2010 through the present and has made deductions from the lessor's royalty payments.

Class Action Complaint ¶ 77, *Suessenbach*, ECF 1. The *Suessenbach* Plaintiffs allege that Defendant Access Midstream engaged "in unlawful conduct to improperly extract billions of dollars in royalties owed to Plaintiffs and other lessors by artificially manipulating and deducting from royalty payments the cost of 'marketing,' 'gathering,' and 'transporting' natural gas." *Id.* at ¶ 1.

On March 31, 2015, Judge Mannion entered an opinion similarly recognizing that the *Suessenbach* Plaintiffs had sufficiently alleged that Access Midstream

participated in a RICO scheme by "conspir[ing] to provide Chesapeake Energy with needed cash by effecting an off-balance sheet loan and satisfying repayment of the loan by disguising inflated deductions from lessors' royalty payments." *Suessenbach Fam. Ltd. P'ship v. Access Midstream Partners, L.P.*, 2015 WL 1470863, at *12 (M.D. Pa. Mar. 31, 2015). Among other things, Access Midstream:

- knew that the fees charged by Access Midstream, including under the Marcellus Gathering Agreement, were far in excess of the market rates of such fees;
- knew and agreed that it would rebate a portion of these inflated fees to Chesapeake Energy and its subsidiaries and affiliates, ostensibly for the use of other equipment and services;
- knew and agreed that the inflated gas gathering and transportation fees would be passed along to Pennsylvania oil and gas lessors in the form of cost deductions from the lessors' royalty payments.

*Id*. at *8. Access Midstream's unlawful conduct, carried out through and association-in-fact enterprise deprived thousands of lessors of their rightful royalty payments, was continuous and open-ended, and was intended to continue for at least a 15-year term. *Id*.; *see also id.* at *4 (recognizing that the illegal scheme "was structured to insure a guaranteed rate of return to Access Midstream for a 15–year period").

As in *Brown*, Access Midstream remains jointly and severally liable for the full amount of damages sustained by the class, which are trebled under RICO, and Chesapeake Energy's bankruptcy has no effect on the *Suessenbach* Plaintiffs' claims or right to recovery.

**By Defendants:**

Access Midstream: These cases have always been a dispute about whether Chesapeake Energy and other entities holding working interests in Plaintiffs' oil and gas leases breached the terms of those leases by deducting certain post-production costs from the royalty calculation. Plaintiffs' attempts to convert these simple contract claims into an insidious antitrust/RICO/conspiracy scheme are even less availing now that all claims against the principal actor – Chesapeake Energy and affiliated entities – have been dismissed with prejudice.

In contrast, Access Midstream has no contractual relationship with Plaintiffs. Access Midstream simply provide gas gathering services, *i.e.*, aggregate natural gas produced from various wells through small diameter gathering lines to processing plants. Access Midstream provided gas gathering services in many parts of the United States and allegedly had the exclusive right to provide gas gathering services to Chesapeake-operated wells in certain parts of northeastern Pennsylvania, including the wells pertinent to Plaintiffs' leases. Access Midstream charged Chesapeake Energy for its gathering services pursuant to long-term contracts. Plaintiffs' claims, including but not limited to, RICO violations, conspiracy, conversion, and unjust enrichment fail as a matter of law.

In addition, in 2021, after this litigation commenced, the named Plaintiffs elected to be paid royalties without any deduction of post-production costs,

including the purportedly supra competitive gathering rates alleged to be the vessel of Plaintiffs' damages.

Domenic J. Dell'Osso, Jr.: At the time of commencement, the *Brown* Action represented an attempt by the *Brown* Plaintiffs to convert a contractual dispute about royalty calculations under oil and gas leases into a RICO violation. The *Brown* Plaintiffs' claims arise out of Chesapeake Energy's sale of an entity holding certain midstream assets (Chesapeake Midstream Operating, LLC) to Access Midstream in December 2012 and certain gas gathering agreements Access Midstream entered into with Chesapeake Energy subsidiaries, including non-party Chesapeake Appalachia LLC. The *Brown* Plaintiffs allege that these gas gathering agreements were improperly designed to pass on inflated post-production costs to lessors, reducing lessors' royalty payments. *See*, *e.g.*, Amended Class Action Complaint ¶¶ 2–4, 39–43, *Brown*, ECF 57.

In December 2012, Mr. Dell'Osso was the Executive Vice President and Chief Financial Officer of former defendant Chesapeake Energy, as well as non-party Chesapeake Appalachia LLC and other Chesapeake-related entities. Mr. Dell'Osso also served as a director of the general partner of Defendant Access Midstream (Access Midstream Partners GP, L.L.C.) from May 11, 2011 to July 1, 2014.

The *Brown* and *Suessenbach* Actions were stayed in March 2017 to permit the Parties to participate in mediation. Stay Order, *Brown*, ECF 167. In August 2018,

the *Brown* and *Suessenbach* Plaintiffs sought preliminary approval of a class action settlement, in which they represented that the factual and legal issues relevant to the *Brown* and *Suessenbach* Actions were thoroughly investigated prior to commencement of the lawsuits and afterwards through the exchange of formal discovery (with more than 130,000 pages produced by Chesapeake Energy), in-depth analysis of the issues presented, expert consultations concerning liability theories and damages, and participation in sophisticated mediations and spirited debate. *See* Mot. for Prel. Appr. of Settlement at 12–13, *Brown*, ECF 185. Plaintiffs' motion remained pending when Chesapeake Energy filed for Chapter 11 bankruptcy in 2020.

The stay continued while Chesapeake Energy and related parties proceeded through bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, emerging pursuant to a Court-approved Confirmation Plan in January 2021, which included, *inter alia*, a release and discharge injunction in favor of Chesapeake Energy and Mr. Dell'Osso in his capacity as a director and officer of Chesapeake Energy. *See* Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates, *In re Chesapeake Energy Corporation*, No. 20-33233 (Bankr. S. D. Tex. Jan. 12, 2021), ECF 2833 (the "Confirmation Plan"); Confirmation Order, *In re Chesapeake Energy Corporation*, No. 20-33233 (Bankr. S. D. Tex. Jan. 16, 2021), ECF 2915. The Confirmation Plan

became effective on February 9, 2021 (the "Effective Date").

The Confirmation Plan includes a discharge of all Claims (as defined therein) arising prior to the Effective Date, a third-party release, and a definition of "Released Parties" that includes "each of [Chesapeake Energy's] current and former directors and officers." *See* Confirmation Plan at Art. VIII.A, VIII.D, and I.A.143. There is now no dispute that the released Claims include Plaintiffs' claims in this case to the extent a defendant is a "Released Party." *See* Order Regarding the Confirmation Order and Plan Against the Brown-Suessenbach Plaintiffs, *In re Chesapeake Energy Corporation*, No. 20-33239 (Bankr. S. D. Tex. Feb. 3, 2025), ECF 768 ("Order Enforcing Confirmation Order"). Accordingly, the *Brown* Plaintiffs dismissed with prejudice their claims against (i) Chesapeake Energy and (ii) Mr. Dell'Osso to the extent they are based on actions taken "in his capacity as a Chesapeake officer." Notice of Partial Dismissal at 1, *Brown*, ECF 245. The *Brown* Plaintiffs may only pursue their claims against (i) Access and (ii) Mr. Dell'Osso "solely [i]n his role as an officer of Access." Memorandum at 5, *Brown*, ECF 260; *see also* Opinion at 3, *Brown*, ECF 253; Notice of Partial Dismissal at 1, *Brown*, ECF 245. Mr. Dell'Osso notes that although the claims alleged in 2014 have fundamentally changed based on the passage of time, rulings by courts and other settlements, the *Brown* Plaintiffs have not modified the allegations or claims asserted in 2014.

There has been no finding by any court that Mr. Dell'Osso took any relevant

actions "solely" in his role as an officer or director of Access Midstream. *See* Order Enforcing Confirmation Order at 9 ("There are no specific allegations that Dell'Osso took actions solely as an officer or director of Access. It appears that claims in the Brown Plaintiffs' Complaint against Dell'Osso are linked to claims involving his role as a Chesapeake officer and to claims that this Order confirms were discharged or released under the Plan."). Indeed, the *Brown* Plaintiffs have not even alleged such actions and they have admitted that absent discovery "it's not possible" to add "any allegations in addition to what's in the amended complaint" to correct that deficiency. *See* May 6, 2025 Status Conference Tr. at 10, *Brown*, ECF 255.

Chesapeake Energy participated in settlement discussions with the Commonwealth of Pennsylvania Office of Attorney General (the "OAG") regarding claims brought by the state for an overlapping class of Pennsylvanians. Chesapeake Energy ultimately entered into a settlement agreement with the OAG on February 9, 2021 ("OAG Settlement"). Notice of the OAG Settlement – together with Chesapeake Energy's settlement of the *Brown* and *Suessenbach* cases and the so-called *MEC* class action in connection with the bankruptcy proceedings – was provided in a combined notice to all Pennsylvania royalty owners. After that notice, Plaintiff James Brown selected the election to be paid royalties based on in-basin index prices, without any deduction of post-production costs, including the purportedly supra competitive gathering rates alleged to be the vessel of the *Brown*

Plaintiffs' damages.

**1.2 The facts the parties <u>dispute</u> are as follows:**

The *Brown* Plaintiffs, Access Midstream, and Mr. Dell'Osso dispute the material facts at issue in the *Brown* Action. The *Suessenbach* Plaintiffs and Access Midstream dispute the material facts at issue in the *Suessenbach* Action.

**<u>agree</u> upon are as follows:**

1.2.1: Plaintiffs and numerous other Pennsylvanians entered into oil and gas leases with Chesapeake Appalachia, L.L.C.

1.2.2: Mr. Dell'Osso was appointed as the Executive Vice President and Chief Financial Officer of Chesapeake Energy, Chesapeake Appalachia, L.L.C., Chesapeake Energy Marketing, Inc., Chesapeake Exploration, L.L.C. and Chesapeake Operating, Inc. in November 2010.

1.2.3: Mr. Dell'Osso was appointed as the Executive Vice President and Chief Financial Officer of Chesapeake Midstream Development, L.L.C. in October 2012.

1.2.4: Mr. Dell'Osso served as a director of Access Midstream's general partner, Access Midstream Partners GP, L.L.C. from May 11, 2011 to July 1, 2014.

1.2.5: Chesapeake Energy and its subsidiaries filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code on June 28, 2020.

1.2.6: By Order of the Bankruptcy Court, Chesapeake Energy's Confirmation Plan became effective on February 9, 2021.

1.2.7: By Order of this Court on May 16, 2025, Chesapeake Energy was dismissed with prejudice from the *Brown* and *Suessenbach* Actions.

**1.3 The legal issues the parties <u>dispute</u> are as follows:**

The *Brown* Plaintiffs, Access Midstream, and Mr. Dell'Osso dispute the material legal issues in the *Brown* Action. Defendants believe the *Brown* Plaintiffs' claims are deficient as a matter of law. The *Brown* Plaintiffs disagree. Defendants believe the *Brown* Plaintiffs have no viable, non-discharged claim against Mr. Dell'Osso. The *Brown* Plaintiffs disagree.

The *Suessenbach* Plaintiffs and Access Midstream dispute the material legal issues in the *Suessenbach* Action. Access Midstream believes the *Suessenbach* Plaintiffs' claims are deficient as a matter of law. The *Suessenbach* Plaintiffs disagree.

**<u>agree</u> upon are as follows:**

None known at this time.

**1.4 Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**

None.

**1.5 Identify any named parties that have not yet been served:**

None known at this time.

**1.6 Identify any additional parties that:**

**plaintiff(s) intends to join:**

None known at this time.

**defendant(s) intends to join:**

None known at this time.

**1.7 Identify any additional claims that:**

**plaintiff(s) intends to add:**

None known at this time.

**defendant(s) intends to add:**

None known at this time.

## 2.0 Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1). Given the passage of time, however, since these disclosures were first made, all parties agree to serve updated initial disclosures by May 1, 2026.

## 3.0 Early Motions

**Identify any motion(s) whose early resolution would likely have a significant effect either on the scope of discovery or other aspects of the litigation:**

In the *Brown* Action, Mr. Dell'Osso expects to present a motion seeking summary judgment that the purported claims against him are barred on numerous grounds, including but not limited to Chesapeake Energy's Confirmation Plan, by the *Brown* Plaintiffs' 2021 royalty elections, and due to lack of damages.

In the *Brown* and *Suessenbach* Actions, Access Midstream expects to present motions seeking summary judgment that Plaintiffs' claims are barred by Plaintiffs' 2021 royalty elections, other issues on the merits and liability, and due to lack of damages.

After completion of necessary discovery, including depositions and expert discovery, the *Brown* Plaintiffs expect to oppose Access Midstream's and Mr. Dell'Osso's motions for summary judgment and to cross-move for summary judgment as to liability, and the *Suessenbach* Plaintiffs expect to oppose Access Midstream's motion for summary judgment and to cross-move for summary judgment as to liability. Plaintiffs note that the notice of proposed class action settlement that solicited royalty elections from class members was issued for three cases: the Pennsylvania Office of the Attorney General case against Chesapeake Energy; the so-called MEC class actions; and the so-called non-MEC class actions (including the *Brown* and *Suessenbach* Actions). Plaintiffs further note that the so-called "Index Election" option included in all three settlements in the bankruptcy proceedings was originally included in the settlements presented to this Court before Chesapeake Energy filed for bankruptcy. The "Index Election" option was and is a negotiated term that did not and does not eliminate the inflated gas gathering and transportation costs deducted from Plaintiffs' royalties.

## 4.0 Discovery

### 4.1 Briefly describe any discovery that has been completed or is in progress:

**By Plaintiff(s):**

The *Brown* and *Suessenbach* Plaintiffs served consolidated discovery requests on Chesapeake Energy and Access Midstream. The *Brown* Plaintiffs also served discovery requests on Mr. Dell'Osso. Plaintiffs have not received anything more than an initial production of documents. The Parties were in the midst of meet and confer discussions at the time these cases were stayed for settlement mediation attempts in March 2017.

When the cases were stayed, Chesapeake Energy had produced 20,626 documents consisting of over 100,000 pages (CEC00000001–CEC00115443), which included certain "go-get" documents, leases and documents collected using an initial set of ESI search terms from a first wave of seven custodians (Jim Johnson, Mr. Dell'Osso, Matthew Klaasen, Deven Bowles, Mark Edge, Chris Sorrells, and Richard Easterly). Chesapeake Energy's last formal production was made on October 30, 2015. Plaintiffs intend to subpoena the remaining, unproduced documents from Chesapeake Energy and its successor companies (including Expand Energy), in addition to seeking the production of other relevant documents regarding events that both pre-date, occurred during the pendency, and post-date Chesapeake Energy's bankruptcy including discovery regarding the effect that

Chesapeake Energy's bankruptcy had on its agreement with Access Midstream and communications regarding the same. Plaintiffs also intend to subpoena testimony from relevant Chesapeake Energy witnesses, including former employees.

When the case was stayed, Access Midstream had produced 1,992 documents consisting of over 16,000 pages (ACMP_PA_0000001–ACMP_PA_0016675), which included certain "go-get" documents and documents using an initial set of ESI search terms from a first wave of 10 custodians (John Seldenrust, Daniela Genchava, Dave Shiels, Rachael Phillippi, Mike Stice, Bob Purgason, Walt Bennett, Kerry Clapp, Regina Gregory, and Chris Mitchel). Access Midstream's last formal production was made on October 26, 2015. Plaintiffs and counsel for Access Midstream have conferred, and are continuing to confer, on how long it will take Access Midstream to complete the review and production of documents for the 10 first wave custodians. Plaintiffs have also requested that Access Midstream produce, as an expedited go-get request, investor and/or lender presentations (often referred to as "Deal Decks") in connection with the offering of equity interests in Access Midstream during the 2010–2014 timeframe, or the solicitation of debt purchases to be paid by Access Midstream during that time. Plaintiffs anticipate that additional custodians, search terms and search locations may also become necessary as discovery progresses, in addition to the production of other relevant documents that post-date Access Midstream's prior collection of documents and may involve

additional discovery requests including but not limited to discovery regarding the effect that Chesapeake Energy's bankruptcy had on its agreement with Access Midstream and communications regarding the same. Plaintiffs also intend to notice deposition testimony from relevant Access Midstream witnesses, including former employees, to be determined as discovery progresses.

When the *Brown* Action was stayed, Mr. Dell'Osso had not produced any documents. On February 23, 2026, shortly after the Status Conference, the *Brown* Plaintiffs renewed their meet and confer request regarding the document discovery served on Mr. Dell'Osso. At a meet-and-confer on March 19, 2026, Mr. Dell'Osso's counsel stated that Mr. Dell'Osso does not currently have any responsive documents in his possession. Mr. Dell'Osso and Plaintiffs will continue to confer about documents relevant to Mr. Dell'Osso, which may involve additional requests for and production of other relevant documents regarding events that both pre-date, occurred during the pendency, and post-date Chesapeake Energy's bankruptcy including but not limited to discovery regarding the effect that Chesapeake Energy's bankruptcy had on its agreement with Access Midstream and communications regarding the same. Plaintiffs intend to notice and/or subpoena Mr. Dell'Osso's deposition testimony.

To the extent Defendants maintain that royalty elections pursuant to settlement agreements entered into in March 2021 are relevant, additional third-party discovery may also be necessary.

On January 14, 2015, Judge Mannion conducted a conference with the Parties to address a dispute over Plaintiffs' requests for documents gathered by Defendants in response to a governmental investigation (*i.e.*, "cloned discovery"). Following the conference, the Chesapeake Energy, Access Midstream, and Plaintiffs briefed the issues, *see Brown*, ECF 94, 95, and 96, *Suessenbach*, ECF 59 and 60, and the dispute was pending at the time that the case was stayed. Whether Access Midstream will continue to oppose Plaintiffs' request that these documents be produced will continue to be discussed among the Parties during the meet and confer process.

**By Defendant(s):**

Dismissed defendant Chesapeake Energy produced extensive documents in these cases. Access Midstream has produced some documents in these cases. Mr. Dell'Osso has not independently produced documents. Mr. Dell'Osso is no longer employed by Expand Energy. During the meet and confer on March 19, 2026, Plaintiffs stated they were interested in documents responsive to three particular document requests that the *Brown* Plaintiffs previously served on Mr. Dell'Osso (document requests 2, 3, and 5). Mr. Dell'Osso is not aware of any unique documents in his possession, custody or control that would be responsive to those

three document requests. Following Mr. Dell'Osso's departure from Expand Energy, he no longer has access to his business-related documents from the relevant time period. And employment contracts setting forth his pay, for example, which would be responsive to document request 2, would be duplicative of information already publicly available in SEC filings. Mr. Dell'Osso accordingly has no additional documents to produce.

On January 14, 2015, Judge Mannion conducted a conference with the Parties to address a dispute over Plaintiffs' requests for documents gathered by Chesapeake Energy and Access Midstream in response to a governmental investigation (*i.e.*, "cloned discovery"). Following the conference, Chesapeake Energy, Access Midstream, and the Plaintiffs briefed the issues, *see Brown*, ECF 94, 95, and 96, and the dispute was pending at the time that the case was stayed. Given the dismissal of Chesapeake Energy and the changes in this action due to the passage of time, the Bankruptcy Confirmation Plan, and the OAG Settlement, Access Midstream and the Plaintiffs may require the opportunity to supplement the briefing to the extent that Plaintiffs intend to proceed with the request. Access Midstream and the Plaintiffs are in the process of meeting and conferring regarding the additional scope of document discovery that is necessary.

**4.2 Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):**

The Parties broadly agree that, in light of the Court's ruling on the motions to dismiss and subsequent filings in the *Brown* and *Suessenbach* Actions, discovery in these cases should be completed efficiently and expeditiously. To that end:

- The Parties agree that Access Midstream will promptly complete the production of documents pursuant to the initial set of ESI search terms from a first wave of 10 custodians (John Seldenrust, Daniela Genchava, Dave Shiels, Rachael Phillippi, Mike Stice, Bob Purgason, Walt Bennett, Kerry Clapp, Regina Gregory, and Chris Mitchel) based on the document collection that had been performed at the time this case was stayed.
- The Parties agree to confer in good faith regarding any additional document discovery that may be required, including reasonable search parameters.
- The Parties agree to confer in good faith regarding any deposition(s) required by the Parties.

The Parties are mindful that the discovery in these cases relates to events that occurred many years ago and may involve testimony from individuals no longer associated with any party. The Parties have agreed to reasonably cooperate to facilitate the efficient production of discovery in light of those considerations.

**4.3 Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects,</u> indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:**

None known at this time.

**4.4 Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:**

None known at this time.

**4.5 For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):**

**4.5.1 depositions (excluding experts) to be taken by:**

**<u>The Defendants' Position</u>**: The Parties should be limited to 12 depositions per side, excluding depositions of experts. Defendants disagree that Plaintiffs should be permitted to take an unlimited number of third-party depositions without seeking leave of the court.

**<u>The Plaintiffs' Position:</u>** The Parties should be limited to 12 depositions per side, excluding depositions of experts and third-parties pursuant to subpoena. Plaintiffs expect to take approximately 12 depositions of third-party subpoena recipients.

Plaintiffs have taken one deposition already.

**4.5.2 interrogatories to be served by:**

The Parties agree that the *Brown* and *Suessenbach* Plaintiffs will serve interrogatories on a consolidated basis and be limited to 25 interrogatories. Access Midstream will be limited to 25 interrogatories. Mr. Dell'Osso will be limited to 25 interrogatories.

**4.5.3 document production requests to be served by:**

The *Brown* and *Suessenbach* Plaintiffs will serve document production requests on a consolidated basis subject to the limitations contained on the Federal Rules of Civil Procedure.

Defendants may also serve document production requests pursuant to the Federal Rules of Civil Procedure.

**4.5.4 requests for admission to be served by:**

The *Brown* Plaintiffs may serve 30 requests for admission on Mr. Dell'Osso for use in the *Brown* Action. Mr. Dell'Osso may serve 30 requests for admission on the *Brown* Plaintiffs for use in the *Brown* Action. These limits do not count towards any requests for admission served for authentication purposes.

The *Brown* Plaintiffs and *Suessenbach* Plaintiffs will serve consolidated requests for admission on Access Midstream and may serve up to 30 requests for admission on Access Midstream for use in either case. Access Midstream may serve 30 requests for admission on the *Suessenbach* Plaintiffs for use in the *Seussenbach* Action and 30 requests for admission on the *Brown* Plaintiffs for use in the *Brown* Action. These limits do not count towards any requests for admission served for authentication purposes.

The Parties agree to confer on this limitation after discovery has commenced, provided that all Parties adhere to the reasonableness and proportionality requirements under the Federal Rules.

**4.6 Discovery of Electronically Stored Information**

The Parties have stipulated to an ESI protocol, which has been entered in both the *Brown* and *Suessenbach* Actions. *See Brown*, ECF 111; *Suessenbach*, ECF 84.

## 5.0 Protective Order

### 5.1 If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

This Court entered a Stipulated Protective Order Governing Discovery of Confidential and Proprietary Information in these cases on December 15, 2024. *Brown*, ECF 90; *Suessenbach*, ECF 53.

### 5.2 If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

## 6.0 Scheduling

**The *Brown* Action**

Having met and conferred, the *Brown* Plaintiffs, Access Midstream, and Mr. Dell'Osso propose to set a schedule for the completion of discovery, class certification, and summary judgment in the *Brown* Action. The *Brown* Plaintiffs, Access Midstream, and Mr. Dell'Osso agree that, given the limitations in the Confirmation Plan and the impact upon claims that may be asserted against Mr. Dell'Osso, Mr. Dell'Osso may seek summary judgment on the issue of whether all claims against him have been released by the Confirmation Plan in accordance with the below schedule without prejudice to his right to later seek summary judgment on all issues, also in accordance with the below schedule. *See Brown*, ECF 253 (denying Mr. Dell'Osso's motion for dismissal of claims against him, "without prejudice to

the Court revisiting this issue on summary judgment following a period of discovery”).

| Event | Proposed Deadline |
|---|---|
| Fact/Merit Discovery Completed | December 11, 2026 |
| Deadline by which Mr. Dell’Osso May File Summary Judgment Motion That All Claims Against Him Are Released Pursuant to the Confirmation Plan | February 12, 2027 |
| Affirmative Expert Reports | March 12, 2027 |
| Rebuttal Expert Reports | May 12, 2027 |
| Expert Discovery Completed | June 11, 2027 |
| Class Certification Motion, if any, including Supporting Briefs | June 18, 2027 |
| Deadline for Oppositions to Class Certification | August 18, 2027 |
| Deadline for Reply Briefs on Class Certification | October 18, 2027 |
| Summary Judgment Motions, including Supporting Briefs | October 18, 2027 |
| Deadline for Oppositions Summary Judgment | December 17, 2027 |
| Deadline for Reply Briefs to Summary Judgment Motions | February 17, 2028 |

**The *Suessenbach* Action**

Having met and conferred, the *Suessenbach* Plaintiffs and Access Midstream propose to set the following schedule for the completion of discovery, class certification, and summary judgment in the *Suessenbach* Action.

| **Event** | **Proposed Deadline** |
|---|---|
| Fact/Merit Discovery Completed | December 11, 2026 |
| Affirmative Expert Reports | March 12, 2027 |
| Rebuttal Expert Reports | May 12, 2027 |
| Expert Discovery Completed | June 11, 2027 |
| Class Certification Motion, if any, including Supporting Briefs | June 18, 2027 |
| Deadline for Oppositions to Class Certification | August 18, 2027 |
| Deadline for Reply Briefs on Class Certification | October 18, 2027 |
| Summary Judgment Motions, including Supporting Briefs | October 18, 2027 |
| Deadline for Oppositions Summary Judgment | December 17, 2027 |
| Deadline for Reply Briefs to Summary Judgment Motions | February 17, 2028 |

**6.1 Final date for joining additional parties:**

The previously ordered deadline to add additional parties has expired. At this time, Plaintiffs do not intend to seek leave to join additional parties.

**6.2 Final date for amending pleadings:**

The previously ordered deadline to amend pleadings has expired. At this time, Plaintiffs do not intend to seek leave to amend their pleadings.

**6.3 All fact discovery commenced in time to be completed by:**

December 11, 2026

**6.4 All potentially dispositive motions should be filed by:**

October 18, 2027

**6.5 Reports from retained experts due:**

Affirmative Reports: March 12, 2027

Rebuttal Reports: May 12, 2027

**6.6 All expert discovery commenced in time to be completed by:**

June 11, 2027

**6.7 This case may be appropriate for trial in approximately:**

To be determined based on the resolution of summary judgment and any motion for class certification.

**6.8 Suggested Date for the final Pretrial Conference:**

To be determined based on the resolution of summary judgment and any motion for class certification.

### 6.9 Trial

To be determined based on the resolution of summary judgment and any motion for class certification.

## 7.0 Certification of Settlement Authority (All Parties Shall Complete the Certification):

I hereby certify that the following individual(s) have settlement authority.

**For Plaintiffs**:

***Brown***
Michael D. Donovan
DONOVAN LITIGATION GROUP, LLC
1885 Swedesford Road
Malvern, PA 19355
Tel: (610) 647-6067
mdonovan@donovanlitigationgroup.com

***Suessenbach***
Joseph H. Meltzer
Tyler S. Graden
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
tgraden@ktmc.com

**For Defendant Domenic J. Dell'Osso, Jr. in the *Brown* Action:**

Domenic J. Dell'Osso, Jr., through his counsel.

**For Defendant Access Midstream Partners, L.P. (n/k/a Williams Companies)**

Access Midstream, through its counsel.

## 8.0 Alternative Dispute Resolution ("ADR")

### 8.1 Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use.

All Parties agree that settlement efforts should be pursued, but the Parties have not yet agreed on any particular ADR procedure.

## 9.0 Consent to Jurisdiction by a Magistrate Judge

The Parties do not agree to jurisdiction by a magistrate judge of this Court.

## 10.0 Other Matters

**Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.**

Not applicable.

Dated: March 27, 2026

**DONOVAN LITIGATION GROUP, LLC**

/s/ Michael D. Donavan
Michael D. Donovan (PA 51895)
1885 Swedesford Road
Malvern, PA 19355
Tel: (610) 647-6067
mdonovan@donovanlitigation group.com

**MCCANN & WALL, LLC**

Robert E. McCann (PA 65735)
Two Penn Center Plaza
Philadelphia, PA 19102
Tel: (215) 569-8488
Fax: (215) 569-8288
rmccann@mccannwallinjurylaw.com

**SALTZ, MONGELUZZI & BENDESKY, PC**

Simon B. Paris
Patrick Howard (PA 88572)
One Liberty Place, 52nd Floor
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 575-3986
Fax: (215) 496-0999
sparis@smbb.com
phoward@smbb.com

*Attorneys for Brown Plaintiffs and the Class*

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

/s/ Kayci B. Hughes
**CROWE & DUNLEVY, P.C.**
Kayci Bair Hughes
Victor E. Morgan
222 N. Detroit Ave., Suite 600
Tulsa, OK 74120
Tel: (918) 592-9800
Fax: (918) 599-6338
kayci.hughes@crowedunlevy.com
victor.morgan@crowedunlevy.com

John S. Summers (PA 41854)
Alan C. Promer (PA 81006)
Dylan J. Steinberg (PA 203222)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 496-7044
jsummers@hangley.com
apromer@hangley.com
dsteinberg@hangley.com

*Attorneys for Defendant Access Midstream Partners, L.P.*

/s/ Elsbeth Bennett
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Robin M. Bergen (*pro hac vice*)
Nowell D. Bamberger (*pro hac vice*)
Elsbeth Bennett (*pro hac vice*)
2112 Pennsylvania Avenue, NW
Washington, DC 20037

/s/ Tyler S. Graden
Joseph H. Meltzer (PA 60136)
Tyler S. Graden (PA 205844)
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
tgraden@ktmc.com
Robert D. Schaub
ROSENN JENKINS &
GREENWALD LLP
15 South Franklin Street
Wilkes-Barre, PA 18711
Tel: (570) 826-5652
rschaub@rjglaw.com

*Attorneys for Suessenbach Plaintiffs and the Class*

**MYERS, BRIER & KELLY LLP**
Daniel T. Brier
John B. Dempsey
Richard L. Armezzani
425 Biden Street, Suite 200
Scranton, PA 18503

**KIRKLAND & ELLIS LLP**
Daniel T. Donovan *(pro hac vice)*
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004

*Attorneys for Defendant Domenic J. Dell'Osso, Jr.*